**BERRY et al. v. FIRST NAT. BANK OF DAWSON. (No. 975.)**

(Court of Civil Appeals of Texas. Beaumont. June 4, 1923. Rehearing Denied June 13, 1923.)

**1. Trial ⬤⇒143—Peremptory instruction properly refused on conflicting evidence.**

Peremptory instruction depending on a question of fact as to which the evidence was conflicting *held* properly refused.

**2. Payment ⬤⇒59—Must be pleaded to be available as defense.**

The defense of payment of the note sued on not having been pleaded is not available, even if the evidence be sufficient to show it.

**3. Judgment ⬤⇒713(3)—Identity of issues and parties necessary for res judicata.**

Identity of issues, and between the same parties, is necessary that judgment in a prior suit may be available as res judicata; so in an action on a note, in which the issue is defendants' liability thereon, and in which they claim the note was to cease to have effect on the issuance to plaintiff of a receiver's certificate by the receiver of a corporation of which most of them were stockholders, and in which plaintiff claims that the certificate was issued only as collateral for the note, judgment in a prior action by another against the corporation and its stockholders, as guarantors of the corporation's debt secured by trust deed on its property, in which plaintiff in the second action intervened making claim on the receiver's certificate, and in which practically the only issue was one of priority between plaintiff therein and intervenor, is not res judicata on the issue in the second case.

**4. Trial ⬤⇒351(5)—Enough that refused special issue was substantially covered by another submitted.**

It is enough that a refused special issue was substantially covered by another special issue requested by the same party and submitted.

**5. Appeal and error ⬤⇒218(2)—To complain of a special issue a charge curing the defect should have been offered.**

That a special issue may be complained of on appeal as misleading it is not enough to have accepted to it, but a special charge curing the supposed defect should have been offered.

Appeal from District Court, Navarro County; Hawkins Scarborough, Judge.

Action by the First National Bank of Dawson against W. E. Berry and others. Judgment for plaintiff, and defendants appeal. Affirmed.

See, also, 223 S. W. 696.

Richard Mays, of Corsicana, and W. E. Spell, of Waco, for appellants.

Woods & Kerr, of Corsicana, for appellee.

O'QUINN, J. Appellee, First National Bank of Dawson, was first chartered as the Dawson State Bank, and was, by due process of law, changed to the First National Bank of Dawson. This is a suit by appellee upon a promissory note for $5,000, less a credit of $2,246.77, executed to the Dawson State Bank by W. E. Berry, Eb Johnson, J. A. Madera, A. Washington and Will Bankston, dated September 23, 1913, and due 90 days after date, brought by appellee, as the legal successor of said Dawson State Bank, against all the makers of said note except Bankston, who died before the filing of the suit. Berry also died while the suit was pending, and the suit was dismissed as to him.

The defendants answered by general demurrer, special exceptions, general denial, and special answers: (1) Denying that they had paid or authorized the payment of any sum on said note; (2) alleging that said note was without consideration, in that it was executed as, and intended to be, collateral security for a line of credit extended by said Dawson State Bank to the receiver of the Hubbard Farmers' Oil & Gin Company between the time when said advances were made by said bank up to and until receiver's certifi-

cates could be issued by the receiver, under order of the court, and delivered to said bank, at which time the note was to cease to be security for said credit, and that upon the receipt by said bank of the receiver's certificate, it should be and was the sole security for said advances so made by said bank; (3) that in August, 1913, in the suit of First State Bank of Hubbard v. Hubbard Farmers' Oil & Gin Company, then pending in the district court of Hill county, Tex., O. O. Condor was by said court appointed receiver of said Hubbard Farmers' Oil & Gin Company, and that, to enable said receiver to provide finances for the operation of said property, the court, on September 8, 1913, authorized the receiver to issue his certificate for $5,000 to be used as security in obtaining such funds, and that said Dawson State Bank agreed with the receiver to make a loan to him in the sum of $5,000, and to accept said receiver's certificate as its security therefor, and that said bank did advance to said receiver said sum, and did accept said certificate as its sole and only security for said loan, and that, in the period of time between the date when the said bank contracted with the receiver to make said loan and when the receiver's certificate could be delivered, the said bank, in reliance upon said agreement with the receiver, made advances from time to time to said receiver and carried same as overdrafts, and that said bank represented to appellants that the bank examiner was making complaints about the overdrafts, and requested the appellants to execute the note in question to be held by it temporarily to satisfy the said bank authorities, and that there was not to be any liability on said note, but that the purpose of same was to terminate when the receiver's certificate was delivered to and accepted by the bank, and that at said time appellants, acting under the same agreement as induced the execution and delivery of said note, deposited with said bank $1,000 of their own money for the purpose of enabling the receiver to operate said mill, and that both the execution of said note and the depositing of said money were without any consideration moving to appellants, but were merely for the accommodation of said bank and said receiver; (4) that later, the receiver's certificate was duly issued and delivered to said bank, and that at said time the said $1,000 was returned to appellants, and it was then agreed and understood that said note was of no further force or effect, and was to be destroyed or surrendered to appellants; (5) that afterwards the said Hubbard Farmers' Oil & Gin Company's mill burned, and the receiver collected a large amount of insurance, which was deposited in the registry of the court for distribution among its creditors; that the First State Bank of Hubbard, plaintiff in the suit in which the receiver was appointed,

claimed that its judgment and debt was a preference claim to said funds, which, if so allowed, would have practically exhausted said funds; that appellants and the Dawson State Bank were parties to a suit of the First State Bank of Hubbard v. Hubbard Farmers' Oil & Gin Company, pending in the district court of Hill county, and that said Dawson State Bank, from whom appellee derived its title, set up its claim upon the receiver's certificate, which it had acquired from the receiver, and asserted a lien upon the assets of said company by virtue of the advances made upon said receiver's certificate; that if there was any liability, which they denied, against them, such liability existed at the time of the litigation over the insurance money in said Hill county district court, and that said liability, if any, was a part of the cause of action asserted by said Dawson State Bank in said cause; that the cause of action now asserted by appellee was asserted in said Hill county suit and prosecuted to a final judgment, and pleaded same as res adjudicata to this suit; and (6) that the estate of deceased Bankston was solvent and asked that same be made a party defendant, which was done, and the interested parties appeared and adopted the answer of appellants and further answered that the estate of their deceased father was insolvent, and that all property inherited by them therefrom was exempt and not subject to execution.

Appellee, by supplemental petition, replied to appellants' answer by general demurrer, numerous special exceptions, general denial, and specially answered: (1) That the judgment in the Hill county case, was not res adjudicata: (a) Because appellee did not become a party to the pending suit in that case when it filed its claim upon the certificate, because said certificate was an adjudicated and ascertained debt and claim subject to be paid out of the funds in the hands of the court; (b) because the certificate and the note here sued upon are different and distinct transactions, independent of each other, and said note was irrelevant in said Hill county suit, for in that appellee had no right to intrude in said receivership proceedings and bring suit against parties upon a personal obligation, which was not done or attempted; and (c) because there already had been a final judgment rendered in said cause before appellee filed its claim, and it was not a party to any issue that was tried on its merits between the parties to this suit in said cause. (2) That the Hubbard Farmers' Oil & Gin Company was a corporation, and that the defendants, except Washington, were stockholders, owning most, if not all, of its capital stock, and were its directors, officers, and managers; that said corporation was largely indebted to the First State Bank of Hubbard, which held a valid first lien upon its property to secure same, and that, defendants were

guarantors and indorsers of said indebtedness, and that said corporation was also largely indebted to the defendants, except Washington, and that they had a lien upon the plant to secure said indebtedness; that said corporation was insolvent and had no money with which to pay for needful repairs and for cotton seed and labor necessary for its operation, and was about to be foreclosed by said First State Bank of Hubbard; that defendants caused a receiver to be appointed; that the gin and mill season was at hand and that unless said gin and mill was operated it would depreciate the value and no profits would accrue to pay its debts; that, in order to repair said mill and operate same, it was necessary that the receiver should be provided with funds; that the defendants sought to make an arrangement with plaintiff whereby plaintiff would take the receiver's certificate for a loan of funds; that plaintiff declined so to do, and refused to make any advancement whatever to said receiver or to pay for any cotton seed, except in so far as funds were provided and deposited with plaintiff for said purpose; that defendants then deposited with plaintiff, to the credit of said receiver, the sum of $1,000, and that immediately thereafter said receiver began to purchase seed and to pay therefor with checks against said account and continued to do so until said amount was exhausted, and that defendants being notified that said funds were exhausted, presented to plaintiff said receiver's certificate for $5,000 in favor of said Dawson State Bank, and sought to have plaintiff accept same and credit said receiver's account therewith, which plaintiff refused to do, but plaintiff offered to loan to defendants personally upon their joint and several note the sum of $5,000, and to take said certificate as collateral security for said note, which offer was accepted by defendants, and the note executed and delivered by them to plaintiff, and the proceeds thereof credited to the account of said receiver and paid out upon his order in due course of business.

The case was tried to a jury upon the following special issues:

"No. 1. Was the $5,000 note executed under an agreement between G. C. Dunn and the makers of the note, or any of them, that said note should be of no force and effect after the receiver's certificate should be issued and delivered to the Dawson State Bank, other than to secure any overdraft in the account of the receiver?"

To which the jury answered: "No."

"No. 2. Was the $5,000 note executed under an agreement between Mr. G. C. Dunn and the makers of said note, or any of them, that the receiver's certificate would be accepted as collateral security to the note?"

To which the jury answered: "Yes."

"No. 3. At the request of defendants, the following is submitted to you: Did G. C. Dunn represent to the defendants that complaint had been made of the receiver's overdrafts by the bank examiner and his directors, and that he wanted them to execute the note sued upon, so that he could show it to the bank examiner and satisfy his directors, and that defendants would not be liable on the note?"

To which the jury answered: "No."

Upon the answers of the jury, judgment was rendered for appellees, and, a motion for new trial being overruled, appellants appealed.

[1] Appellants' first proposition complains that the court erred in refusing to give to the jury special charge No. 1 requested by the defendants. Said charge was an instructed verdict for the defendants, and was requested on the theory that the note in question was not a legal obligation of defendants. We think the proposition should be overruled. It was contended by appellants that the note was given for two purposes: (1) That it was to protect overdrafts made by the receiver during the interim between the beginning of repairs and operating the oil mill and the issuance and delivery of the receiver's certificate for $5,000 authorized by the court, and that, when the certificate was delivered, then the note in that respect ceased to be of any force; and (2) that the receiver having made some overdrafts before the issuance and delivery of the receiver's certificate, which was the cause of some complaints on the part of the bank examiner and the directors of the bank, the note was given to show to them and to satisfy them until the receiver's certificate should be received, and for those two purposes only, and, as the bank had received the certificate and there were no overdrafts, hence the note was not a legal obligation on the part of defendants. The appellee denied this contention, and asserted that the note was an original undertaking, and that the receiver's certificate was received and accepted by appellee only as collateral security for the note. Appellee also denied that the note had been given for the purpose of satisfying the bank examiner and the directors about the overdrafts, as contended by appellants. These matters were submitted to the jury, and they found against appellants' contention and in favor of appellee.

[2] But appellants insist that, if said note was a legal obligation, the same had been paid, and introduced statements and entries upon appellee's account books to show payment. This contention cannot be sustained, for the very good reason that appellants nowhere plead payment of the note, and therefore the issue of payment was not before the court. It is a fundamental rule of practice that neither pleadings without proof nor proof without pleadings will entitle the litigant to relief. Furthermore, we do not think the evidence would have supported such plea, had it been duly made.

[3] By the second proposition, appellants complain that:

"The evidence in this case is not such as to warrant a judgment against the defendants, or either of them, because the evidence was undisputed that the Dawson State Bank, prior to September, 1913, agreed with O. O. Condor, receiver of the Hubbard Farmers' Oil & Gin Company, to advance the receiver the necessary funds with which to repair said mill, purchase seed, and continue the operation during the season of 1913-1914 upon receiver's certificates authorized by the judgment of the district court of Hill county, Tex., and that said certificate of $5,000 was issued by the receiver on September 22, 1913, to the Dawson State Bank, which certificate was accepted by the bank and $5,000 less interest credited to said receiver; and when said bank intervened in the case of First State Bank of Hubbard v. Hubbard Farmers' Oil & Gin Company, in the district court of Hill county, Tex., basing its answer upon said' receiver's certificate for $5,000, the final judgment of the court in said case was res ·adjudicata, and the First National Bank of Dawson could not assert a cause of action against the defendants in this case upon a note which was never more than an accommodation note, and which had been paid off August 5, 1914."

It will be noted that appellants insist that the receiver's certificate was accepted by the bank, and that the bank credited same to the receiver less the interest. This very contention, whether the note was an original obligation and the certificate collateral to secure same, was submitted to the jury, and they found against appellants. Besides, the deposit slip issued by the bank shows that the note for the $5,000 was deposited to the credit of the receiver, less the interest, and there is no evidence in the record that the receiver's certificate was ever credited, but, to the contrary, it' is shown that same was attached to the note as collateral security for same. Did the intervention proceedings in the case of First State Bank of Hubbard v. Hubbard Farmers' Oil & Gin Company, and the judgment therein, constitute res adjudicata? In order to constitute res adjudicata, four things must occur: (1) Identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; (4) identity of the quality in the person for and against whom the claim is made. The facts are:

The Hubbard Farmers' Oil & Gin Company was a corporation doing business at Hubbard, in Hill county, Tex., and became heavily indebted to the First State Bank of Hubbard, and on February 24, 1912, executed and delivered to said bank its deed of trust on its property consisting of several lots situated in Hubbard and the improvements, machinery, etc., on said lots. To further secure said indebtedness certain fire insurance on the property of said company was taken out in the sum of $27,635, the premiums for which were paid for by said bank. On July 7, 1913, the First State Bank of Hubbard filed suit in the district court of Hill county against said company and its stockholders, W. C. Horne, Eb Johnson, J. A. Madera, Percy Wood, W. E. Berry, and Will Bankston, as guarantors of said indebtedness to recover judgment for its debt and for the foreclosure of its lien. On September 2, 1913, final judgment in said cause was rendered in favor of said bank against the Hubbard Farmers' Oil & Gin Company for $18,937.95, and for the foreclosure of its said lien, and the suit was dismissed as to the guarantors, the said stockholders.

On July 28, 1913, pending said suit, and before final judgment, and over the protest of said First State Bank of Hubbard, a receiver of said Hubbard Farmers' Oil & Gin Company was appointed by the court upon the application of the stockholders (appellants herein) of said company, who took charge of the property of said company, and by the authority of the court issued his certain certificate for $5,000· for the purpose of obtaining funds to repair and begin operating said gin and mill, which certificate was placed with the Dawson State Bank and is the certificate here in question. October 11, 1913, while in operation, said gin and mill was destroyed by fire. An adjustment was had with the insurance companies, and the sum of $18,639.23 was collected, which was paid into the registry of the court for the benefit of said company's creditors. After collecting said insurance, the receiver, acting under order of the court, sold the lots upon which the gin and mill property had stood, and certain salvage, receiving for the whole the sum of $2,600, which he also paid into the registry of the court.

On April 24, 1914, the Dawson State Bank filed its petition in intervention in the district court of Hill county, in the suit by the First State Bank of Hubbard against Hubbard Farmers' Oil & Gin Company, in which judgment had already been rendered for said First State Bank of Hubbard for its debt and foreclosure of its lien, setting up all the facts of the receivership, the issuance of the $5,000 receiver's certificate, the ownership and possession of said certificate by said Dawson State Bank, and alleged that, by reason of the object of· the receivership and the issuance and negotiation of said certificate, the. same was a first lien on the assets of said oil and gin company in the registry of the court, and prayed for an order of the court directing the payment of same. June 30, 1914, the First State Bank of Hubbard· filed its answer, contesting said plea 'of intervention, and denying intervener's (Dawson State Bank's) claim of prior lien, and asserted that its (the First State Bank of Hubbard's) lien was a first and superior lien

upon said funds for the payment of its judgment.

Upon a hearing the court adjudged the claim of the Dawson State Bank to be a prior claim against said funds, and ordered same to be paid first. The First State Bank of Hubbard appealed from this judgment to the Court of Civil Appeals at Dallas, which reversed said judgment, held that the First State Bank of Hubbard, by virtue of its lien, which existed prior to the receivership or the issuance of the receiver's certificate, had a preference lien on said funds, which should be first satisfied. When the money in the registry of the court was paid out under the orders of the court, the Dawson State Bank received the sum of $2,246.77, which it credited on both the note and the certificate.

Now, was the identical question here in controversy (appellants' liability on the note) in issue and finally adjudicated in the case of First State Bank of Hubbard v. Hubbard Farmers' Oil & Gin Company in the Hill county district court? A judgment concludes the parties only as to the facts actually decided, or which were necessarily involved in it without the existence of which such judgment could not have been rendered, and is not conclusive as to matters not litigated or material to the recovery in the former suit. Pishaway v. Runnels, 71 Tex. 352, 9 S. W. 260; 15 R. C. L. § 452, p. 977. The very matter must have been fully and fairly investigated, tried, and finally adjusted. Black on Judgments, vol. 2, § 614, p. 936; Id. § 616, p. 939. The note here in issue was not in issue in the Hill county case. Where the issues in the second action were not raised by the pleadings of the former; the judgment in the first action cannot be a bar to the latter. Philipowski v. Spencer, 63 Tex. 607; Pishaway v. Runnels, 71 Tex. 353, 9 S. W. 260. For the judgment in the Hill county case to have been an estoppel in this case, there must have been identity of issues and between the same parties in both actions; it is not enough that they were parties to the two suits when there was no controversy between them in the first. The only issue in the Hill county case, in which the Dawson State Bank was interested, was the issue between it and the First State Bank of Hubbard, the plaintiff in that case, as to which of said banks had priority of claim in the funds in the hands of the court, which said funds had been paid into the registry of the court before the intervention by the Dawson State Bank, and this issue between said banks arose after the First State Bank of Hubbard had obtained a final judgment for its debt sued for in that case, and after the amount claimed by the Dawson State Bank had been established by the receiver's certificate long before said intervention. As to parties of appellants only Washington and Johnson were interveners with claims in the said Hill county suit,

and the only evidence of their interventions is the reference to them in the judgments of distribution of the funds, and their oral testimony, which did not disclose their contentions. The only record evidence showing that appellants were ever parties to the Hill county suit is their answer and judgment dismissing them from said suit, which was before the issuance of the receiver's certificate.

Moreover, appellee intervened in the Hill county suit at the request of appellants, to protect and to obtain payment out of the funds of the insolvent corporation of the receiver's certificate issued for the purpose of obtaining funds with which to repair and operate the property in his custody, which certificate as claimed by appellee and as found by the jury, was held by appellee as collateral security for the payment of the note here in question. It was the legal duty of appellee to protect the security it held and to assert every reasonable effort to collect same, and it would have been negligent not to have done so, and if, by reason of its negligence, the value of the security was lost, it would have been liable for same. Furthermore, so far as is disclosed by the record here, the liability of appellants on the note was not in issue in the Hill county case, neither by pleadings nor by proof, so that question was not before the court, and hence not adjudicated. It does not appear that the Dawson State Bank was there claiming adversely to appellants in said suit.

We think it conclusively appears that the question of res adjudicata was not raised by the evidence, and hence that the court did not err in refusing to submit said issue to the jury.

Appellants complain that the court erred in not submitting special issue No. 2, requested by appellants, as to whether the receiver paid off the note sued for. There was no error. There was no plea of payment, and hence the inquiry had no support in the pleadings. What we have said as to this disposes of the proposition as to special requested issue No. 8.

Appellants' proposition (point No. 3 in brief), asserting error because of the court's refusal to give in charge to the jury appellants' special requested issues Nos. 3, 4, 5, and 6, which all related to matters in the suit of the First State Bank of Hubbard v. Hubbard Farmers' Oil & Gin Company, going to the plea of res adjudicata, should be overruled, as we have held that the issue here, the liability of appellants on the note sued upon was not involved in said former suit.

[4] Appellants' proposition asserting that the court erred in not submitting to the jury the special issue No. 9, to wit:

"Was the agreement between G. C. Dunn and the defendants that the note sued upon was

executed and delivered to the bank to enable Dunn to make a showing to the bank examiner and satisfy his directors and to cover overdrafts of the receiver until such time as the receiver's certificate was delivered to plaintiff, bank?"

is overruled. Special issue No. 3 submitted to the jury substantially covered the matter in No. 9, and was given at the request of appellants.

Appellants' fourth proposition is that the court erred in submitting special issue No. 1 to the jury. Special issue No. 1 was:

"Was the $5,000 note executed under an agreement between G. C. Dunn and the makers of the note, or any of them, that said note should be of no force and effect after the receiver's certificate should be issued and delivered to the Dawson State Bank, other than to secure any overdraft in the account of the receiver?"

Relative to the burden of proof as to special issue No. 1, the court charged the jury:

"In reference to question No. 1 submitted to you, the court charges you, in connection therewith, that the burden of proof is upon the defendants to prove by a preponderance of the evidence that there was an agreement between G. C. Dunn and the makers of said $5,000 note that said note should be of no force and effect after the receiver's certificate should be issued and delivered to the Dawson State Bank."

Appellants insist that said issue was error, because (1) it incorrectly presented to the jury the defensive issues raised by their pleadings and proof; (2) that it was prejudicial and harmful to the rights of appellants; and (3) that it presented two distinct questions of fact: (a) was the agreement that the note was to be of no force after the receiver's certificate was delivered? and (b) was the note to cover overdrafts in the account of the receiver without respect as to when the overdrafts should have arrived?

We think the issue sufficiently clear and responsive to the issues offered by appellants. Appellants in their answer alleged that the note was given to secure any overdrafts that might occur pending the delivery of the receiver's certificate. No overdrafts were shown after the delivery of the receiver's certificate. In view of the court's charge relative to the burden of proof as to special issue No. 1 and the strong contest as to the purpose of the execution of the note, we do not think the jury could have been mislead by the wording of special issue No. 1 relative to overdrafts, but that same must have been understood as relating to overdrafts occurring prior to the delivery of the receiver's certificate. However, if the issue was error, in that it contained two questions, we do not think it was prejudicial, and, furthermore,

although appellants excepted to said issue, they did not offer any special charge curing the supposed defect, and therefore cannot complain.

No error being shown, the judgment is affirmed.